# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Guy Richard,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-17-03806-PHX-DJH<br><br>**ORDER** |

Plaintiff seeks judicial review of the Social Security Administration Commissioner's decision denying his application for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits (Doc. 16). Plaintiff filed an Opening Brief, Defendant filed a Response, and Plaintiff filed a Reply. (Docs. 16, 17, and 18). After review of the record, the parties' briefs, and applicable law, the decision of the Commissioner is reversed and remanded for further proceedings consistent with this Order.

**I.  BACKGROUND**

Plaintiff filed an application for SSDI benefits under Title II of the Social Security Act on January 10, 2014, and application for SSI benefits under Title XVI of the Social Security Act on September 9, 2014. (AR[1] 20). Both applications allege a disability beginning April 26, 2013. (*Id.*) Plaintiff was 50 years old at the time of his alleged onset of disability. (AR 50). Plaintiff graduated high school and his past relevant employment

---
[1] Citations to "AR" are to the administrative record.

includes a job as a hardwood floor installer. (AR 34, 57–59). Plaintiff claims he is unable to work due to chronic liver disease and cirrhosis, anxiety, and cognitive impairments. (AR 23).

After state agency denials, the Administrative Law Judge ("ALJ") held a hearing on July 15, 2016. (AR 44-86). Following the hearing, the ALJ issued an unfavorable decision on October 26, 2017, which was adopted by the Social Security Administration Appeals Council as the agency's final decision. (AR 1-3, 20-37). On February 7, 2018, Plaintiff filed his Complaint, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), requesting judicial review and reversal of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

In *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014), the Ninth Circuit Court of Appeals reiterated the well-settled standards governing judicial review of an ALJ's disability determination. "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Id.* at 1009 (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); 42 U.S.C. §§ 405(g), 1383(c)(3)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). In determining whether substantial evidence supports the ALJ's decision, a district court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Long-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and factual findings

offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). Put another way, the ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

A district court considers only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Similarly, the Court can "review only the reasons provided by the ALJ . . . and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### III. ALJ's Five–Step Evaluation Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The ALJ follows a five-step evaluation process to determine whether an applicant is disabled under the Social Security Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity" in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013).

Applying the five-step evaluation process, the ALJ here found that Plaintiff was not

disabled and not entitled to benefits. (AR 36). At step one, the ALJ concluded Plaintiff did not engage in substantial gainful activity since April 26, 2013, the alleged disability onset date. (AR 23). At step two, the ALJ determined the Plaintiff's chronic liver disease and cirrhosis; anxiety; and cognitive impairments were severe. (*Id.*) Additionally, the ALJ found Plaintiff's obesity to be a non-severe impairment. (AR 23-24). At step three, the ALJ held that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." (AR 24). At step four, the ALJ determined that Plaintiff had

> the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the [Plaintiff] must alternate to standing or sitting for 10 minutes after every one hour of sitting, standing, or walking. The [Plaintiff] is limited to frequent bilateral handling and fingering. The [Plaintiff] is able to frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds; and occasionally balance. The [Plaintiff] is limited to simple, routine, and repetitive tasks but not at a production rate pace (*e.g.*, assembly line work). The [Plaintiff] is able to have occasional contact with co-workers and the public. In addition to normal breaks, the [Plaintiff] would be off-task five percent of the time in an eight-hour workday.

(AR 26). In making this determination, the ALJ discredited Plaintiff's testimony about the extent of his impairments, as well as one of Plaintiff's treating physician's opinions. The ALJ further found that Plaintiff was unable to perform any past relevant work. (AR 34). At step five, the ALJ found that "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform . . . ." (AR 35). The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from April 26, 2013, through the date of this decision . . . ." (AR 36).

**IV. DISCUSSION**

Plaintiff argues that the ALJ erred (1) by rejecting the assessments of Plaintiff's treating physician, Dr. Chen-Yang; and (2) by discrediting Plaintiff's symptom testimony. (Doc. 16 at 1-2). Plaintiff asks this Court to remand for an award of benefits, or in the

alternative to remand for further proceedings. (*Id.* at 23). Defendant argues that the ALJ's decision should be affirmed because it was free from harmful error. (Doc. 13).

### A. The ALJ Improperly Weighed Medical Opinions

At step four, the ALJ must determine whether a claimant can perform his past relevant work by determining the Plaintiff's residual functional capacity. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). In determining the Plaintiff's residual functional capacity, the ALJ must assess all evidence. The ALJ is responsible for determining whether a Plaintiff meets the statutory definition of disability and is not bound by a physician's ultimate conclusion that the claimant is "unable to work" or "disabled." 20 C.F.R. §§ 404.1527, 416.927(d)(1). But the ALJ generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the plaintiff's impairments, the plaintiff's physical or mental limitations, and what the plaintiff can still do despite the impairments and limitations. 20 C.F.R. §§ 404.1527, 416.927(a)(2). In weighing medical source opinions in Social Security cases, there are three categories of physicians: (1) treating physicians, who actually treat the plaintiff; (2) examining physicians, who examine but do not treat the plaintiff; and (3) non-examining physicians, who neither treat nor examine the plaintiff. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally entitled to deference. *See id*. More weight typically should be given to the opinion of a treating physician than to the opinions of non-treating physicians because treating physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

Thus, where a treating physician's opinion is not contradicted by another physician it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it still may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."

*Garrison*, 759 F.3d at 1012 (internal quotation and citation omitted). An ALJ's rationale for discounting a treating physician's opinion is comprised of two parts: (1) the stated reasons for discounting a treating physician's opinion and (2) the evidence supporting those reasons. Error can occur in both.

Here, Plaintiff argues that the ALJ erred in assigning controlling weight to the opinions of a nurse practitioner and assigning only partial weight to the opinions of Plaintiff's treating physician. The Court agrees.

i. <u>Opinions of Nurse Practitioner Susan Peppers</u>

Nurse practitioner, Susan Peppers, opined in November 2014 that Plaintiff had anxiety but found that "there was no reason to keep him off work on a lifetime basis." (AR 577). The ALJ afforded "controlling weight" to Ms. Peppers's opinions. (AR 32). The ALJ determined that Ms. Peppers's opinions were "reasonable and consistent with the evidence." (*Id.*) The Court finds two significant issues with the weight afforded Ms. Peppers's opinions.

First, even though the ALJ did acknowledge that Ms. Peppers was "not an acceptable medical source[,]" the ALJ—without clear explanation—still assigned Ms. Peppers's opinions controlling weight. However, Social Security Administration ("SSA") regulations provide that controlling weight is only appropriate for acceptable medical sources.[2] *See Mack v. Astrue*, 918 F. Supp. 2d 975, 982 (N.D. Cal. 2013) (finding "[a] social worker, even a licensed clinical social worker, is not an acceptable medical source

---

[2] The Court acknowledges that a nurse practitioner working closely with and under the supervision of an acceptable medical source can qualify as an acceptable medical source. *See Molina v. Astrue*, 674 F.3d 1104, 1112 n.3 (9th Cir. 2012) (physician's assistant did not qualify as a medically acceptable treating source because the record did not show she worked under a physician's supervision and she otherwise "acted alone"); *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (nurse practitioner's opinion considered that of an acceptable medical source where she worked closely with and under the supervision of physician). However, here the ALJ concedes that Ms. Peppers is not an acceptable medical source, and the Court finds no evidence in the record to suggest otherwise; therefore, the Court finds that Ms. Peppers was not an acceptable medical source.

under the regulations, and therefore cannot be given great or controlling weight."); *see also Kimberly S. v. Comm'r, Soc. Sec. Admin.*, 2018 WL 6198275, at *4 (D. Or. Nov. 28, 2018) (finding "opinions from non-acceptable medical sources may not be given controlling weight"); *Hyten v. Berryhill*, 2017 WL 1206007, at *4 (D. Idaho Mar. 31, 2017) ("For purposes of this case, the primary distinction between 'acceptable medical sources' and 'other' medical sources is that opinions from 'other' medical sources are not entitled to controlling weight, as are opinions of treating physicians."). Thus, the Court finds that the ALJ erred in affording controlling weight to Ms. Peppers's opinions.

Second, the ALJ failed to even acknowledge that Ms. Peppers's opinions regarding Plaintiff's residual functional limitations were contradicted by Plaintiff's treating physician, Dr. Chen-Yang. The Court finds that the ALJ's failure to provide evidence to support her determination that Ms. Peppers's opinions regarding Plaintiff's residual functional limitations was an error. *See Meyer v. Astrue,* 2008 WL 752609, at *15 (D. Ariz. Mar. 18, 2008) ("The opinion of a nurse practitioner as to a claimant's residual functional capacity is not entitled to as much weight as a non-examining, examining, or treating physician's opinion . . ."). It is clear from the record that Ms. Peppers's opinions most closely align with the ALJ's conclusions; however, the ALJ cannot cherry pick evidence that supports her conclusion, while ignoring the rest of the record. *See Garrison*, 759 F.3d at 1018 (9th Cir. 2014). Thus, the Court finds that the ALJ erred in weighing Ms. Peppers's opinions regarding Plaintiff's functional limitations.

### ii. <u>Opinions of Plaintiff's Treating Physician</u>

Dr. Chen-Yang, Plaintiff's treating physician, offered several assessments and statements regarding Plaintiff's medical conditions and specific work-related limitations. In her July 21, 2016 statement, Dr. Chen-Yang opined that Plaintiff's tremors were exacerbated by walking or standing and, despite taking medication, Plaintiff's tremors prevented him from being on his feet for more than two hours a day. (AR 824). Additionally, she opined that Plaintiff's anxiety had essentially rendered him homebound and his decreased memory would make it difficult for him to follow direction and

remember necessary normal working environment details. (*Id.*) Moreover, Dr. Chen-Yang opined that Plaintiff's condition was stable "without much improvement so [she] would not expect patient to be able to return to work." (*Id.*) The ALJ determined that the opinions of Dr. Chen-Yang were entitled to only partial weight because her opinions were "only partially consistent with or supported by the record." (AR 33). This conclusory assertion falls far short of the standard required for rejecting the opinion of a treating physician. *See* 20 C.F.R. §§ 404.1527, 416.927; *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). The law is clear that the ALJ must do more than offer her conclusions. "[She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988). The ALJ did not satisfy this burden in concluding, without explanation, that Dr. Chen-Yang's opinions were "only partially consistent with or supported by the record." (AR 33).

Moreover, the ALJ also stated that "Dr. Chen-Yang's assessment of the [Plaintiff's] mental and physical limitations [was] largely congruent with the objective medical findings in the record[;] . . . [h]owever, her conclusion regarding the [Plaintiff's] permanent disability [had] no probative value and [was] rejected." (*Id.*) Thus, on one hand the ALJ determined that Dr. Chen-Yang's assessments of Plaintiff were "largely congruent with the objective medical finds in the record," yet on the other hand the ALJ determined that Dr. Chen-Yang's opinions were only entitled to partial weight. The ALJ failed to provide the logical bridge necessary to explain why she only afforded partial weigh to Dr. Chen-Yang's opinions, even though she found that Dr. Chen-Yang's assessments of Plaintiff were "largely congruent with the objective medical finds in the record . . . ." The Court finds that the ALJ's decision to only afford partial weight to Dr. Chen-Yang's opinions is not supported by substantial evidence. *See Swanson v. Comm'r of Soc. Sec. Admin.*, 274 F. Supp. 3d 932, 939 (D. Ariz. 2017) (finding that the ALJ erred when it found that the examining physician's opinion was "generally supported by objective medical evidence[,]" yet discrediting that opinion in favor of a non-examining physician).

Furthermore, Defendant argues that the law reserves the disability determination to

the ALJ, and an ALJ is not bound by the uncontroverted opinions of a plaintiff's physician on the ultimate issue of disability. (Doc. 17 at 5-6). However, an ALJ cannot reject the uncontroverted opinions of a plaintiff's physician on the ultimate issue of disability "without presenting clear and convincing reasons for doing so." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (finding "the ultimate conclusions of [treating] physicians must be given substantial weight; they cannot be disregarded unless clear and convincing reasons for doing so exist and are set forth in proper detail."). Here, the ALJ simply stated that Dr. Chen-Yang's "conclusion regarding the [Plaintiff's] permanent disability has no probative value and is rejected." (AR 33). However, the ALJ overlooks the fact that Dr. Chen-Yang didn't just opine that she does not expect Plaintiff to be able to return to work, she also explained exactly why she conclude that his limitation prevented him from working. (AR 824). The Court finds that the ALJ failed to provide a reasoned and thorough explanation for disregarding Dr. Chen-Yang's findings. *See Embrey*, 849 F.2d at 422 ("Particularly in a case where the medical opinions of the physicians differ so markedly from the ALJ's, it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings.").

Additionally, the ALJ determined that Dr. Chen-Yang's opinion on Plaintiff's "mental limitations cannot be given controlling weight, as she does not specialize in psychiatry or psychology. Thus, these opinions are given partial weight." (*Id.*) Although more weight generally is given to the opinion of a specialist, this does not mean that the primary care physician's opinion can be rejected solely because the physician was not a psychologist or psychiatrist. *See Perry v. Astrue*, 2012 WL 6555074, at *4 (E.D. Cal. Dec. 14, 2012) (noting that the opinion of a primary care physician about the claimant's mental impairments could not be rejected solely because the physician was not a psychologist or psychiatrist). The only reason provided by the ALJ for affording partial weigh to Dr. Chen-Yang's opinion regarding Plaintiff's mental health was that Dr. Chen-Yang did not specialize in psychiatry or psychology. Thus, the Court finds that the ALJ's decision to

afford only partial Dr. Chen-Yang's opinion regarding Plaintiff's mental health was insufficient.

### iii. Medical Opinions Conclusion

Although the ALJ recounted much of the medical evidence (AR 26-34), she failed to explain what evidence supported her conclusions. For example, the ALJ afforded great weight to the opinions of two examining, consulting physicians; however, those two opinions actually contradicted the ALJ's findings, yet the ALJ did not account for, or even acknowledge, the contradiction. (*See* AR 32-33). Without explanation, the ALJ essentially disregarded the entire medical opinion hierarchy when she determined that a nurse practitioner's opinion should be given controlling weight and a treating physician's opinion should only be given partial weight. In short, the ALJ erred in failing to weigh all relevant factors and in rejecting the opinions of Dr. Chen-Yang, Plaintiff's treating physician, without adequate explanation supported by substantial evidence. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (ALJ erred in rejecting treating physician's opinion and adopting the consensus view where the ALJ failed to give specific and legitimate reasons for the rejection); *Embrey*, 849 F.2d at 421-22 (noting that it is not enough for the ALJ to simply recount the medical evidence in seriatim fashion and then reach unexplained conclusions).

## B. The ALJ Erred in Discrediting Plaintiff's Symptom Testimony

The ALJ must engage in a two-step analysis to determine whether a plaintiff's testimony regarding subjective pain or other symptoms is credible. The ALJ first determines whether the plaintiff presented objective medical evidence of an impairment that reasonably could be expected to produce some degree of the symptoms alleged. If the Plaintiff makes this showing and there is no evidence of malingering, "the ALJ can reject the [Plaintiff's] testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *see* 20 C.F.R. § 404.1529(c)(2).

Plaintiff testified that because of his anxiety, and even with medication, he gets

panic attacks once or twice a week that typically take about an hour to recover from, and Plaintiff stated that his anxiety is worsen by stressful situations. (AR 67-68). Furthermore, Plaintiff's cognitive impairment affects his ability to interact socially, cook, read, and watch television shows. (AR 68-69). Despite taking medication, Plaintiff's tremors prevent him from standing or walking for more than twenty minutes at a time. (AR 65-66). Plaintiff testified that he has difficulty walking around the block, which takes about twenty minutes, and he often has to rest after a walk or, at times, he even needs to stop and rest halfway through his twenty-minute walk. (AR 60, 64-65). The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 29). Because the ALJ made no finding of malingering, she was required to give clear and convincing reasons for his adverse credibility finding. "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002)). For reasons explained below, the ALJ has not met this high burden.

The ALJ found Plaintiff to be more active than he claimed and that his condition was improved. (AR 29). Even though the ALJ provided several reasons for this finding, the Court finds that none of the proffered reasons have merit. The ALJ first noted that in Plaintiff's Disability Report (AR 247-55), he "reported that he stopped working in February 2013, because he was laid off, as opposed to reasons related to his medical issues." (AR 29). The ALJ does not explain the significance of that finding, nor does she reconcile that finding with Plaintiff's testimony that he stopped working on April 26, 2013, when he was admitted to the hospital for liver disease and cirrhosis. (AR 61). Moreover, the record is replete with other instances in which Plaintiff reported that he stopped working on April 26, 2013, when he was admitted to the hospital. (*see e.g.*, AR 422, 484,

and 651). The ALJ ignored the instances in the record in which Plaintiff provided that he stopped working on April 26, 2013, when was admitted to the hospital, and instead selected the one instance that Plaintiff provided that he stopped working in February 2013. ALJs, however, "must review the whole record; they cannot cherry-pick evidence to support their findings." *Bostwick v. Colvin*, 2015 WL 12532350, at *2 (S.D. Cal. Mar. 30, 2015) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001)); *see Garrison*, 759 F.3d at 1017 & n.23 (noting that ALJs may not cherry-pick from mixed results)). Additionally, the ALJ appears to overlook the fact that Plaintiff's severe cognitive impairments affect his memory; therefore, he simply could have been confused in filling out the Disability Report.

The ALJ also stated that "although the [Plaintiff] testified that he tires easily after walking around the block, the record indicates that by June 2015, he was able to exercise regularly, *e.g.*, swimming three to four times a week." (AR 29). Thus, the ALJ seemed to conclude that Plaintiff's ability to swim three to four times a week renders his symptom testimony not credible. (AR 27). The ALJ, however, does not acknowledge that Plaintiff characterized his "swimming" as "pool acitivitys [sic]" and that it was one of his doctors that noted "[e]xercise (times per week): 3-4/wk" and "exercise type: swimming." (*Compare* AR 260, *with* AR 501). Furthermore, the ALJ did not ask any questions during the hearing about what "swimming" actually entails. *See Lannon v. Comm'r of Soc. Sec. Admin.*, 234 F. Supp. 3d 951, 961 (D. Ariz. 2017) (acknowledging that swimming can mean "just getting in the water, floating around" or it can also mean actually "taking strokes and swimming"). In any event, the ALJ found Plaintiff's symptom testimony not credible because he could swim. (AR 29). This reason clearly is not convincing, nor is it supported by the record. Moreover, this Circuit has repeatedly held that "[o]ne does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *see Reddick*, 157 F.3d at 722.

The ALJ also noted that Plaintiff testified that "he does not take naps but rather,

sleeps early and wakes up early, generally maintaining okay sleep, thereby demonstrating his improved condition." (AR 29). To support her finding of Plaintiff's "improved condition," the ALJ compared a November 2014 Disability Determination form completed by Plaintiff, in which he provided that he took two, sixty to seventy-five-minute naps per day (AR 272-73), with Plaintiff's testimony at his hearing, in which he stated that he does not take naps during the day. (AR 66). However, the ALJ fails to explain how Plaintiff's ability to function without taking naps during the day indicates an overall "improved condition." In fact, the record reflects that in July 2015 Plaintiff himself had denied having significant fatigue. (AR 30). The ALJ failed to explain how Plaintiff's improved sleep is inconsistent with Plaintiff's testimony concerning the effects of his anxiety, cognitive impairments, and tremors.

The ALJ summarized numerous treatment records and exam results, but gave no reasons—let alone clear and convincing ones—as to why they support her adverse credibility finding. Moreover, "[o]nce a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see* 20 C.F.R. §§ 404.1529, 416.929(c)(2). Here, the ALJ specifically found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 29). Her simple recounting of the medical evidence therefore does not support an adverse credibility finding. The ALJ also erred in failing to cite to the specific testimony she found not credible. "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Reddick*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834).

Defendant acknowledges that "Plaintiff experiences severe limitations, as the ALJ agreed[,]" but argues that the "ALJ reasonably concluded from the record that Plaintiff was not as disabled as he alleged." (Doc. 17 at 4). As explained above, however, there is no material inconsistency when the testimony is viewed as a whole and in the proper context.

In summary, the record shows that Plaintiff's daily activities are quite limited and carried out with much difficulty, and the medical evidence is not clearly inconsistent with Plaintiff's complaints. Considering the record as a whole and in the proper context, the Court concludes that the ALJ failed to provide clear and convincing reasons for finding Plaintiff's symptom testimony not credible. *See Garrison*, 759 F.3d at 1016; *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).

## IV. REMAND

Having decided to reverse the ALJ's decision, the Court has discretion to remand the case for further development of the record or for an award of benefits. *See Reddick*, 157 F.3d at 728. Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits. *See Smolen*, 80 F.3d at 1292; *Varney v. Sec'y of Health and Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, the Court finds that it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. The Court finds that further evaluation of the medical evidence consistent with this Order, along with further analysis of Plaintiff's subjective symptom testimony are necessary before a proper determination of Plaintiff's disability can be made. Therefore, the Court, in its discretion, finds that a remand for further proceedings is appropriate here. Accordingly,

**IT IS ORDERED** the decision of the Commissioner is **REVERSED** and the case **REMANDED** to the ALJ for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment accordingly.

Dated this 26th day of March, 2019.

Honorable Diane J. Humetewa
United States District Judge